# JOHNSON v. BRYANT.

EQUITY; JUDGMENT CREDITORS' SUITS; HUSBAND AND WIFE; FRAUD.

A decree subjecting a lot in the name of a wife to a lien of certain judg-
ments against her husband, *affirmed*, although the wife testified that
she contributed towards the payments made on another lot, with
part of the proceeds of the sale of which the lot in question was
purchased, and her testimony was supported by that of her husband,
where it appeared that their testimony was contradictory and unsup-
ported by other evidence, and the entire transaction gave rise to sus-
picion of fraud on their part; and, it being contended on behalf of the
wife that, by the decree appealed from, she was deprived of the
value of her dower in the lot sold, it was further *held* that as part
of the proceeds of the sale of the lot was unaccounted for, there was
not sufficient evidence to show that her dower interest had not been
extinguished.

No. 1883. Submitted May 8, 1908. Decided June 2, 1908.

HEARING on an appeal by the defendants from a decree of
the Supreme Court of the District of Columbia granting the re-
lief prayed for in a judgment creditors' bill.       *Affirmed.*

The facts are stated in the opinion.

*Mr. Wilton J. Lambert* and *Mr. Rudolph Yeatman* for the
appellants.

*Mr. Mason N. Richardson, Mr. James A. Cobb, Mr. A. A.
Birney,* and *Mr. William H. Richards* for the appellees.

Mr Justice ROBB delivered the opinion of the Court:

This is an appeal from a decree of the supreme court of the
District in a judgment creditors' bill, subjecting lot 36, square

194, in this District to the lien of complainants' respective judgments aggregating $2,880 with interest from November 25, 1902.

In about 1876, Jerome A. Johnson, one of the appellants herein, purchased a lot in this District for which he agreed to give not to exceed $1,400. He was then a clerk in one of the Departments with a salary of $1,200 a year. The year following he married Anna M. Johnson, who joins with him in this appeal. In 1883, having completed payment for the lot, it was conveyed by deed to Johnson and held by him until December 5, 1902, when he sold it for $3,000 cash. Prior to and at the time he was a stockholder and director in the Capital Savings Bank, which bank, on October 23, 1902, was placed in the hands of receivers. Soon thereafter suits were instituted against the stockholders including Johnson. There was some question as to whether Mrs. Johnson was not also liable because of two shares of stock which she held. Fearing judgments against them, appellants, in June, 1903, purchased said lot 36, and procured one Robert H. Bundy, who was a cousin of Mrs. Johnson, to take the record title. Bundy and Johnson went to the bank, where Johnson withdrew $1,700 by a check to his own order, and handed it to Bundy, who used it in making a down payment on the purchase price of the lot. Conveyance was made to Bundy, who at once recorded his deed. At the same time he executed a conveyance of the lot to Mrs. Johnson, but this deed was not recorded until April 27, 1907, after the filing of the amended bill herein alleging title in Mrs. Johnson. At the same time Bundy purchased this property for the Johnsons, he executed a deed of trust on the property to secure his note to Mrs. Sprague, the grantor of the property, for $2,500. This note was not given in good faith, and was immediately canceled and given to Mrs. Johnson. The deed of trust securing it, however, was duly recorded.

It is contended that Mrs. Johnson, after her marriage, contributed from $1,000 to $1,500 towards the purchase price of the original lot from money which she earned as a dressmaker; that Johnson, in consideration of such contribution, agreed that

she should receive half the proceeds of the sale of the lot; that she consented to the sale of the lot on condition that she should receive one half of the proceeds to reimburse her for said advancements and in lieu of her dower; and that she permitted her husband to retain the entire proceeds of the sale because she had no bank account at the time.

The trial court found that said lot 36 was not the property of the defendant Anna M. Johnson, but was the property of her husband Jerome A. Johnson, and with that conclusion the record compels us to agree. The facts and circumstances surrounding the entire transaction are pregnant with suspicion, and the only evidence that Mrs. Johnson ever contributed anything towards the payment on the original lot was her own testimony and that of her husband. In view of the contradictory nature of their testimony, little weight can be attached to it. Johnson testifies that he did not pay to exceed $1,400 for the lot. It was purchased in 1876 and paid for in full in 1883, and yet Mrs. Johnson testifies that she contributed from $1,000 to $1,500 towards its payment after her marriage to Johnson in 1877. There is not a scintilla of evidence that she was conducting a dressmaking establishment during that time. Her own testimony and that of her husband is to the effect that her mother was conducting such an establishment, and that she was employed by her. Moreover, if Mrs. Johnson had contributed towards the payment for this lot, it is altogether likely that it would have been conveyed to her and her husband jointly, and not to him alone. We are fully convinced that Johnson was the sole owner of this lot.

It is next contended that the decree is erroneous because it deprives Mrs. Johnson of her right to the value of her dower interest in the lot sold. It is undisputed that she had a dower interest in this lot, and she testifies that, before joining her husband in the deed of conveyance, he promised to pay her one half the proceeds in satisfaction of her dower interest and in consideration of payments which she had made on the lot. Johnson's testimony is to the same effect. Had he given her a note, we would uphold it to the extent of her dower interest. *Sykes*

v. *Chadwick,* 18 Wall. 141, 21 L. ed. 824. In view of the fact
that she was clearly entitled to dower, we hold that, under this
testimony, she was entitled to the value of that interest out of
the proceeds of sale. The record shows, however, that Johnson
received $2,897.69 net for said lot; that he deposited $2,500 in
his own name. Out of this sum $1,700 was applied towards the
purchase of said lot 36. The record shows that Johnson de-
posited to his wife's credit $281.68 of the balance, which she
received. This leaves $916.01 yet to be accounted for. John-
son does not attempt to explain what became of this money, and,
in view of the circumstances surrounding the transaction, we are
not convinced that the dower interest of Mrs. Johnson has not
been fully extinguished.

The decree must be affirmed with costs, and it is so ordered.

*Affirmed.*